■ LEVCO CONSTRUCTION CORP., Appellant-Respondent, v. STATE OF NEW YORK, Respondent-Appellant. (Claim No. 49440.) — Cross appeals from a judgment in favor of claimant, entered January 26, 1972, upon a decision of the Court of Claims. On November 10, 1964, the State of New York issued an invitation for bids for the construction portion of modernization work on the Alfred E. Smith Office Building in Albany, New York. The work encompassed by this invitation involved the replacement of a heating system and the installation of air conditioning in the building. The bidding for this work was submitted under two alternative proposals. Proposal No. 1 included all of the work contained in the specifications and/or on the drawings. Proposal No. 2 eliminated certain portions of the work contained in the specifications. Because some of the original language of Proposal No. 2 was thought to be unclear, Proposal No. 2 was amended by Addendum No. 5 issued December 14, 1964. On March 5, 1965, claimant and the State entered into a contract based on claimant's bid under Proposal No. 2. Claimant commenced work on the project on April 1, 1965. The trial court awarded claimant damages in the sum of $24,155.91. The trial court sustained claimant's causes of action numbers 5, 6, 8, 9, 13, 17 and 18, but dismissed causes of action numbers 2, 3, 7, 10, 11, 12, 14, 15, 16 and 19. Claimant appeals from this judgment of the trial court, contending that causes of action numbers 2, 3, 12,

14, 15 and 16 were erroneously dismissed. The State cross-appeals, contending that claimant's recovery in action numbers 9 and 13 was improper. The present appeal raises five issues concerning the construction of the contract between the claimant and the State. We note at the outset that the court may not, under the guise of interpretation, make a new contract for the parties or change the words of a written contract so as to make it express the real intention of the parties if to do so would contradict the clearly expressed language of the contract (*Rodolitz* v. *Neptune Paper Prods.*, 22 N Y 2d 383). Circumstances extrinsic to the agreement will not be considered when the intention of the parties can be gathered from the instrument itself (*West, Weir & Bartel* v. *Carter Paint Co.*, 25 N Y 2d 535). The first issue raised on this appeal is whether the trial court erred in dismissing claimant's "Second" and "Third" causes of action. In its second cause of action, claimant alleged that the State breached the contract by requiring claimant to install new ceilings in the center core of the office building. In its third cause of action, claimant alleged that the State breached the contract by requiring claimant to remove existing ceilings and ceiling materials from the center core and wings of the office building. Both of these two causes of action, which constituted the major part of the claim (seeking damages in the sum of $120,475), were based on the conflict between the claimant's and the State's understanding of the scope of work encompassed by alternate Proposal No. 2. As originally drafted, Proposal Nos. 1 and 2 read as follows: "*Alternate Proposals* Separate proposals will be required for work of this Contract as follows: *Proposal No. 1* — If the Contract is awarded upon the basis of Proposal No. 1, it shall include all work specified and/or shown on the drawings. *Proposal No. 2* — If the Contract is awarded upon the basis of Proposal No. 2, it shall include all work specified and/or shown on the drawings except toilet rooms, first floor, new ceilings and pipe and duct closures in the entire two wings indicated as Phase II, Stage I, and the entire Tower indicated as Phase II, Stage II on Drawing 64/254 shall be omitted." Subsequently, pursuant to Addendum No. 5 dated December 14, 1964, the wording of Proposal No. 2 was changed to read as follows: "*Alternate Proposals* Change Proposal No. 2 to read as follows: *Proposal No. 2* — If the contract is awarded upon the basis of Proposal No. 2, it shall include all work specified and/or shown on the drawings except toilet rooms on the first floor, new ceilings and pipe and duct closures in the entire two wings indicated as Phase II, Stage I and the entire tower indicated as Phase II, Stage II on drawing 64/254 shall be omitted." The singular purpose of this change in wording was to clarify any ambiguity which might exist as to the work excluded under Proposal No. 2, specifically the work involving the toilet rooms. Instead of a comma after "rooms", the words "on the" were added between "rooms" and "first" to plainly indicate that the "toilet rooms on the first floor", and not "toilet rooms" and the "first floor", were not included under Proposal No. 2. No other change was made in Proposal No. 2. Claimant contends that all the work on new ceilings throughout the entire building was excluded from the contract under Proposal No. 2. The trial court found that the only new ceilings eliminated under Proposal No. 2, by clear and unambiguous language, were the new ceilings in the wings. We agree. The work excepted by Proposal No. 2 is plainly comprised of three sections: the toilet rooms on the first floor, new ceilings *and* pipe and duct closures in the entire two wings, and the entire tower. Claimant contends that the word "and" between "new ceilings" and "pipe" in this clause was used by the draftsman of Proposal No. 2 in a connective as

well as in a separative sense, with the resulting ambiguity compounded by careless punctuation. In our view, however, the presence or absence of a comma after "new ceilings" is integral to a determination of whether or not "new ceilings" was modified by "in the entire two wings", and we therefore feel that the trial court was correct in concluding that the absence of a comma was not unintentional so as to create an ambiguity. Since, therefore, the language of the contract could not be found to be ambiguous, the trial court was correct in not considering the extrinsic evidence offered by claimant with regard to the interpretation of Proposal No. 2. The trial court's decision dismissing claimant's second and third causes of action should therefore be affirmed. The second issue raised on this appeal is whether the trial court erred in dismissing claimant's "Twelfth" cause of action. In this cause of action, claimant sought to recover damages in the amount of $1,981.93, resulting from the State's allegedly unwarranted refusal to permit claimant to use gypsum blocks in lieu of hollow tile or concrete blocks in the mechanical equipment rooms. Claimant based this cause of action on paragraph 8 of section 10 of the State Architect's Standard Specifications, which provides as follows: "8. Gypsum Blocks, conforming to the requirements of A.S.T.M. Specification C-52-41, may be used in lieu of hollow tile or concrete blocks except in the following locations: (a) In basements. (b) In shower rooms. (c) Back of tile wainscots or tile base. (d) Back of cement plaster, lime plaster cement base or terrazzo base. (e) Where load bearing blocks are specified." Since mechanical equipment rooms are not listed as an exception in the above paragraph, claimant argued that he should have been permitted to use gypsum blocks in lieu of hollow concrete blocks in those rooms. The trial court rejected this argument on the basis of another paragraph in the same section of the standard specifications. Paragraph 1 of section 10 of the State Architect's Standard Specifications provides: "1. Option.— Hollow Blocks may be hollow tile or hollow concrete except only concrete blocks shall be used where blocks are exposed (not furred or plastered)." The trial court held that gypsum blocks could not be used here because they would be exposed. In our view, the trial court's interpretation fails to harmonize these provisions. We believe that paragraph 1, in stating that there exists an option regarding the use of hollow tile or hollow concrete blocks, only requires that if hollow blocks are to be used where they are to be exposed, then hollow concrete must be used instead of hollow tile. It does not state that any other kind of nonhollow block cannot be used where such blocks are to be exposed, and therefore it would appear that gypsum blocks were, by virtue of paragraph 8, a permissible alternative to hollow blocks. If the State wanted only hollow concrete blocks to be used in the mechanical equipment rooms, and not gypsum blocks, the contract specifications should have contained a simple sentence stipulating the sole use of hollow concrete blocks in such rooms, and/or amending or eliminating paragraph 8 of section 10 of the standard specifications. In the absence of such a provision, and giving effect to an interpretation harmonizing paragraphs 1 and 8, we must conclude that the State had no right to insist on the use of hollow concrete blocks. The trial court therefore erred in dismissing claimant's twelfth cause of action. The third isssue raised on this appeal is whether the trial court erred in dismissing claimant's fourteenth, fifteenth and sixteenth causes of action, which sought to recover for the additional costs and expenses incurred by the claimant because of delays caused by the State. Claimant based these causes of action essentially on the assertion that the completion date under Proposal No. 2

was October 1, 1965, while work on the project was not complete until December, 1966. The trial court based its dismissal of these causes of action on the finding that the completion date for the project, as stipulated in the contract signed by claimant and the State, was January 1, 1967, and that since claimant completed work before this date, claimant was not entitled to recover for any alleged delays. The agreement signed by claimant and the State, which is specifically for the construction work under Proposal No. 2, stipulates a completion date of January 1, 1967. The only evidence claimant has that a different completion date was intended by the parties is a tentative work schedule contained in the bidding specifications, allegedly indicating that work under Proposal No. 2 was to be completed by October 1, 1965. In our view, a tentative schedule unilaterally prepared as a guide prior to the signing of the contract cannot be relied upon to alter a clear provision in the contract that the completion date was to be January 1, 1967. The decision of the trial court on causes of action 14 through 16 must therefore be affirmed. The fourth issue raised on this appeal is whether the trial court erred in sustaining claimant's cause of action number 13. Under the contract specifications, claimant, as the contractor for construction work, had the responsibility to remove and dispose of all debris resulting from all work. Addendum No. 6 to the contract specifications concededly permitted claimant to use a rubbish chute for the removal of rubbish. Claimant did supply and use such a rubbish chute on the job site for the removal of debris. Prior to completion of claimant's work, however, the State ordered claimant to remove this rubbish chute. Claimant complied with this order under protest, and, as a result, claimant incurred additional expenses in the removal of debris. The trial court held that the contract gave claimant the right to use a rubbish chute for the life of the contract and that the State breached the contract by ordering the chute's removal and awarded claimant stipulated damages of $12,161.86. The State contends that it was empowered to order the removal of the rubbish chute, relying upon the following provision in the contract specifications: "DISCONTINUANCE, CHANGES AND REMOVALS Should a change in location of any temporary equipment herein specified be necessary in order to progress the work properly, the contractor who installed it shall remove and relocate such equipment as directed without additional cost to the State." In our view, reading this provision together with that portion of the contract which permitted use of a chute leads to the conclusion that the State could only order the relocation of the chute, not its permanent removal without replacement, since it was still required for the removal of debris. Accordingly, the State breached the contract by requiring the complete removal of the chute and was properly held liable for the additional costs resulting from such removal. The fifth and final issue raised on this appeal is whether the trial court erred in awarding claimant $460 under cause of action number 9. In this cause of action claimant sought to recover an amount deducted by the State on the ground that claimant failed to install certain steel plates shown on the drawings. The trial court held that a notation on the drawings that "drain and lead flashing" were not included in claimant's contract also eliminated the steel plates from claimant's contract, because the steel plates *were part of the drain*. Accordingly, the trial court held that the State's deduction for claimant's failure to install these plates was improper. We disagree. A perusal of the drawings indicates that the steel plates were not part of the drain, but rather were part of the roof structure in which the drains were installed. Therefore, the notation that the drains themselves were "Not in contract" would not exclude por-

tions of the roof which were not components of the drains or of the lead flashings. Moreover, the "Amendments to Section 13" of the contract specifications declare that "[a]ll structural steel shapes and plates required by the drawings" not otherwise excluded were part of claimant's contract. The judgment, insofar as it sustains an award to claimant in cause of action 9 must be reversed. Judgment modified, by reversing so much thereof as sustains cause of action number 9 in the amount of $460 and dismisses cause of action number 12 in the amount of $1,981.93; award increased by the amount of $1,521.93, together with appropriate interest, and, as so modified, affirmed, without costs. Staley, Jr., J. P., Greenblott, Sweeney, Kane and Reynolds, JJ., concur.